IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | Case No. 00-2692 (JHW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| JAMES J. HAYES | ) | |
| Appellant, | ) | |
| | ) | C.A. No. 04-0477 JJF |
| v. | ) | |
| | ) | |
| GENESIS HEALTH VENTURES, INC., et al., | ) | |
| Appellees. | ) | |

# APPELLANT'S OPENING BRIEF

# TABLE OF CONTENTS

**Table Of Authorities** ................................................................................................ ii

**Background And Procedural History** .................................................................. 1

**Argument** ................................................................................................................. 4

**A. The Bankruptcy Court Abused Its Discretion In Denying Genesis Shareholders A Post-Confirmation Equity Committee:** ........................ 4

    1. By Not Determining Whether Equity Holders Were Adequately Represented; ................................................................................................ 4

    2. By Not Considering Whether Genesis' Shares Were Widely Held And Publicly Traded; .................................................................................. 5

    3. By Not Considering The Size And Complexity Of The Bankruptcy; .... 6

    4. By Not Considering The Timeliness Of The Request Relative To The Status Of The Case; and ................................................................... 8

    5. By Not Considering The New Evidence Contained In The Haskell Complaint. .................................................................................................. 9

**B. The Bankruptcy Court Denied Shareholders Their Constitutional Rights In Denying The Appointment Of A Post-Confirmation Equity Committee** ........................................................................................................ 13

**Conclusion** .............................................................................................................. 15

**Certificate of Service** ........................................................................................... 15

**Appendix:**

    A. Hearing Transcript Including Ruling ..................................................... Tab A
    B. Cover Letter Transmitting Amended Notice of Appeal ....................... Tab B
    B. Declaration of W.C. McGahan ................................................................. Tab C

# TABLE OF AUTHORITIES

**Cases:**

*James J. Hayes* v. *Genesis Health Ventures., et al.* Cert. Pet. No. 04-1460.............3,7

*In re Becker Industries Corp.*, 55 BR 945 (Bankr. S.D.N.Y. 1985)................ 6

*In re Emons Indus.*, 50 B.R. 692 (Bankr. S.D.N.Y. 1985) ........................ p7n3

*In re Genesis Health Ventures, Inc., et al.*, 266 B.R.591
(Bankr. D. Del.) ........................................................................ 6,7,10,11,12

*In the matter of Genesis Health Ventures, Inc., Debtors: Richard Haskell, et al.* v. *Goldman Sachs & Co. et al.*, app. pending .... 3,8,9,10,11

*In re Johns-Manville Corp.*, 68 B.R. 155 163 (S.D.N.Y. 1986)...................... 4

*In re Kalvar Microfilm*, Inc. 195 B.R. 599 (Bankr. D. Del. 1996)................ 5,8

*In re Kendavis Holdings Co.*, 249 F. 3rd 383 (5th Cir. 2001) ......................... 12

*In re Wang Laboratories, Inc.*, 149 B. R. 1 (Bankr. D. Mass. 1992)............. 4

**Constitution:**

Amendment V (1791) ................................................................................ 13

**Statutes:**

Bankr. Code, 11 U.S.C. 1102(a) (2) (1994)...................................................... 4

Bankr. Code, 11 U.S.C. 1129(a)(1) ........................................................Passim

Bankr. Code, 11 U.S.C. 1129(b)(2) ........................................................Passim

**Other Authorities:**

*7 Collier on Bankruptcy* 1102.03(2) (b) ............................................................ 9

**Miscellaneous:**

"HealthSouth Advisors Said To Be Under Scrutiny," *The New York Times*,
Mar. 26, 2003 ................................................................................ n7p10

"HealthSouth's Go-To Guy," *Fortune*, Apr. 28, 2003 p 38. .................... n7p10

## BACKGROUND AND PROCEDURAL HISTORY

This case is an appeal of a May 13, 2004 denial by the United States Bankruptcy Court for The District of New Jersey of a request to for appointment of a post-confirmation equity committee. The motion was filed on September 28, 2001 and was made so that an equity committee could support the appeal of the Bankruptcy Court's September 20, 2001 order confirming the reorganization plan of Genesis Health Ventures by an individual member of the equity class. On October 15, 2001, the Official Committee of Unsecured Creditors filed its Response in Opposition to the Motion. On October 24, 2001, James J. Hayes, the individual member of the equity class, filed a reply.[1]

To preserve the appeal rights of the equity class, Hayes filed a Notice of Appeal of the Bankruptcy Court's confirmation order. Then, with no response from the Bankruptcy Court, Hayes filed a similar motion and brief in this Court on January 18, 2002. Genesis filed its brief in opposition on January 30, 2002. This Court denied the motion for appointment of an equity committee on September 30, 2002. On November 6, 2002 this Court rescheduled appellant's opening brief for November 22, 2002. After the opening brief was filed, Genesis rather than file their reply brief scheduled for December 20, 2002 wrote this court a letter dated December 3, 2002. The letter expressed surprise with the briefing schedule as it noted a similar captioned appeal had been dismissed on September 30, 2002. Genesis attributed the problem to the double docketing of identical notices of appeal nine weeks apart by the District Court. But Genesis should not have been surprised as it had responded to the earlier filed appeal and created the later filed

---

[1] The date of the motion and reply reflect the dates these documents were posted from the Northern Virginia Regional Post Office. Genesis shows these dates as October 5, 2001 and November 1, 2001.

appeal by designating the record on appeal that was docketed in the District Court on the same day as the Notice. (See App. B) Nevertheless, this Court used the doctrine of res judicata to dismiss the first docketed appeal on March 12, 2003. The Court ordered parties disagreeing with the decision to file a motion to reopen. This Court denied Hayes' motion to reopen on February 26, 2004.

Faced with the prospect of another pro se appeal, on March 13, 2004, Hayes submitted a letter to the Bankruptcy Court requesting a hearing on the motion for the appointment of a post-confirmation equity committee. The Bankruptcy Court had not seen the motion or briefs and held a hearing to better understand the problem. Following this hearing, Hayes received a telephone call from another Genesis shareholder in Atlanta, who had been monitoring the Genesis litigation. The shareholder informed Hayes of new litigation that had been filed by former Genesis bondholders in New York. In the meantime, the Bankruptcy Court put the motion for a post-confirmation equity committee on the schedule for the May 13, 2004 hearing. On April 23, 2004, Genesis, who had not responded to the September 28, 2001 motion, filed an objection and brief in opposition to the post-confirmation equity committee. Hayes, who had now obtained a copy the bondholder complaint, filed a reply to the debtor's principal objection that Genesis was "hopelessly insolvent" based on new evidence contained in the bondholder complaint. The eighty-six page bondholder complaint described an alleged financial accounting fraud on the Bankruptcy Court comparable in complexity to Enron, WorldCom or HealthSouth. The complaint described thirteen improper accounting adjustments and transfers of value from the Genesis estate that implied that Genesis debtors had understated the reorganized enterprise value by about $1.2 billion dollars! A

2

value understatement of this magnitude satisfies the deficiencies of the senior lenders, subordinated debenture holders, and other unsecured creditors and leave $600 million for shareholders.

The bondholder suit was moved by consent of the parties to the Bankruptcy Court and is captioned: *In the matter of Genesis Health Ventures, Inc., Debtors: Richard Haskell, et. al v. Goldman Sachs & Co. et. al.* The plaintiffs are about half the Genesis subordinated bondholder class that as a class had voted against the reorganization plan. In the bankruptcy, the group included the GMS group and Charles Grimes, who with separate counsel and financial advisors, opposed the reorganization plan and presented their own valuations of Genesis. Charles Grimes appealed the confirmation and this Court dismissed that appeal for equitable mootness on June 14, 2002. Grimes subsequently joined with members of the GMS Group as individual named plaintiffs headed by Richard Haskell in the fraud suit. The Bankruptcy Court dismissed the complaint in its entirety on April 27, 2005 and the plaintiffs have filed their notice of appeal to this Court.

With the continuing delay on the appointment of an equity committee, Hayes appealed this Court's dismissal of the bankruptcy appeal to the Third Circuit. On December 6, 2004, the Third Circuit affirmed this Courts judgment, and on January 25, 2005 the petition for rehearing was denied. A petition for a writ of certiorari was docketed by the Supreme Court on May 5, 2005.

A post-confirmation equity committee is required to protect the interests of the Genesis equity class through participation in a remand that arises from the Hayes

Supreme Court appeal; intervention in the Haskell litigation and/or an action to reopen the bankruptcy proceeding as determined by committee counsel.

## ARGUMENT

### A. The Bankruptcy Court Abused Its Discretion In Denying Genesis Shareholders A Post-Confirmation Equity Committee:

#### 1. By Not Determining Whether Equity Holders Were Adequately Represented;

The principal inquiry in the appointment of an equity committee is whether the equity security holders are adequately represented. 11 U.S.C. 1102(a) (2) (1994) The question on whether shareholders have received adequate representation is a determination in the court's discretion.

> The statute involves two inquiries. It must first be determined whether the appointment of a committee is necessary to assure adequate representation.
>
> *In re Wang Laboratories, Inc.*, 149 B. R. 1 2 (Bankr. D. Mass. 1992)

In denying the request for a post-confirmation equity committee, the bankruptcy court never considered whether the equity holders were adequately represented in either the pre-confirmation proceedings nor in the pro se appeal of the bankruptcy court's order confirming the reorganization plan. In one of the few appeals on this fundamental issue the District Court for the Southern District of New York concluded:

> the proper legal standard to apply in determining whether to appoint an official equity committee for equity shareholders is whether an official committee is necessary to provide adequate representations of the equity holders' interests.
>
> *In Re Johns-Manville Corp.*, 68 B.R. 155 163 (S.D.N.Y. 1986)

The Bankruptcy Court's failure to evaluate the only factor required by the bankruptcy code in making a determination is a clear abuse of the court's discretion.

**2. By Not Considering Whether Genesis' Shares Were Widely Held And Publicly Traded;**

The Chief Judge of this Bankruptcy Court determined:

> [t]he court will consider several [six] factors on such a motion, [for an equity committee] including 1. Whether the shares are widely held and publicly traded.

*In re Kalvar Microfilm*, Inc. 195 B.R. 599 600 (Bankr. D. Del. 1996)

Providing equity committees to shareholders of widely held, publicly traded companies is good economic policy as well as good bankruptcy law. Investor confidence and stock prices will improve if investors believe their interests will be fairly represented in bankruptcy proceedings. The converse happens (lower confidence and lower stock prices) in bankruptcies like Genesis and Kmart, for example, where equity investors loose their entire investment while vulture investors, who purchase securities treated more favorably in bankruptcy, pocket huge windfall gains. The Genesis senior lenders named as defendants in the fraud suit acquired their loans in the secondary market at about 50% of the loan value. They doubled their investment in the bankruptcy and gained another 50% since the bankruptcy. The windfall gains are at the expense of subordinated bond and equity holders who lost money on their Genesis investments. Equity investors see these windfall gains coming at their expense, causing a loss of confidence in owning equity that lowers stock prices and national wealth.

Before its bankruptcy, Genesis, the nation's third largest nursing home operator and the second largest institutional pharmacy company, was a widely held public company listed on the New York Stock Exchange. In denying Genesis shareholders a post-confirmation equity committee, the Bankruptcy Court ignored this positive factor

favoring the appointment of an equity committee. This failure constitutes another abuse of the Bankruptcy Court's discretion.

### 3. By Not Considering The Size And Complexity Of The Bankruptcy;

One bankruptcy court determined that the appointment of an equity committee is required in complex bankruptcies of large corporations.

> [T]he complex nature of this large case requires representation of Debenture holders and shareholders.
>
> . . .
>
> As *Collier* illustrates, the size of a bankruptcy case strongly indicates the need for additional committees representing different interests. A large case brings with it not only a varied debt structure but complex business requiring significant post-petition financing and a heavily negotiated plan.

*In Re Becker Industries Corp.*, 55 B.R. 945 949 (Bankr., S.D.N.Y.1985)

The Genesis bankruptcy is a large and exceedingly complex bankruptcy. It was a joint bankruptcy of Genesis and its subsidiary Multicare and the reorganization plan included a merger of Genesis and Multicare that was unique in bankruptcy jurisprudence. *In Re Genesis Health Ventures, Inc.* et al., 266 B.R. 591 597. The complexity of the Genesis bankruptcy is illustrated by:

- the issue of wealth transfer from the Multicare estate to the Genesis estate, a new issue for bankruptcy courts; Id.612

- a serious conflict of interest between the senior lender vulture investors,[2] who acquired Genesis and Multicare loans cheaply in the secondary markets,

---

[2] These "lenders" never loaned Genesis or Multicare a dime yet are masquerading as creditors who provided goods, services, or capital to the enterprise. In this respect these "lenders" and the Haskell plaintiffs are similar to equity holders. Prioritizing secondary claims is loophole in the bankruptcy law which promotes gaming of the bankruptcy process by vulture investors. This harms the equity markets as stocks fall precipitously on the announcement of bankruptcy and investors reduce their bids for stocks of companies with weak balance sheets or high debts.

and the Genesis subordinated bond holders and equity holders who had no interest in Multicare; [3] Id. 619

- a dramatic increase in the value of health care stocks after the reorganization plan was distributed to 19 creditor classes to inform their vote required hasty revisions to the earlier valuations that supported the Plan's distribution schemes. The increase in the Genesis enterprise value caused the senior lender recoveries to exceed their claims at the high end point of the valuation; (Id. 616 and App. C, No.'s 6 & 7)

- rejection of the Plan by Genesis unsecured creditors and a contested confirmation hearing with protests from two sets of counsel and financial advisors that provided complex investment banking valuations that were hundreds of millions of dollars higher than the valuations by the debtors, senior lenders and unsecured creditors committees of Genesis and Multicare; Id. 597 & 612.

- application of complex bankruptcy code cram-down provisions that would prevent confirmation if the Senior Lenders' distributions exceeded their claim; [4] and

---

[3] A leading case on the appointment of equity committees considered a similar conflict as the key factor in the appointment of an equity committee despite the company's "hopeless insolvency," a condition that in the court's view did not warrant an equity committee.

> No doubt part of the reason that the opposition to the appointment of an equity committee was withdrawn was recognition of the potential problems attendant upon a case in which there is a substantial identity between secured creditors, unsecured creditors and equity holders and there are public shareholders without such other positions.

*In Re Emons Industries, Inc.*, 50 B.R. 692 693 (Bankr., S.D.N.Y. 1985)

[4] To confirm a nonconsensual plan, the debtors must prove that the plan does not unfairly discriminate against the subordinated debenture holders and equity holders and that the treatment of these classes is fair and equitable. Id. 598.

- a fraud on the bankruptcy court suit alleging that the valuations underpinning the Plan were understated by hundreds of millions of dollars because certain Genesis officers conspired with certain senior lenders to provide false EBITDA values to the investment advisors providing the valuations. (Tr. 23 & 30)

These factors demonstrate a complexity much greater than the bankruptcy that led the Becker court to the conclusion that complex bankruptcies involving large corporations require equity committees. The Bankruptcy Court failed to consider the size and complexity of the Genesis bankruptcy in denying the appointment of an equity committee. This oversight is another abuse of its discretion.

### 4. By Not Considering The Timeliness Of The Request Relative To The Status Of The Case;

After reciting the milestones of the bankruptcy, the Bankruptcy Court denied the request for an equity committee because, in its view, it was procedurally untimely. (Tr. 24) The *Kalvar* court – which included six factors for determining whether to appoint an equity committee – advised bankruptcy courts in this district thusly:

> [n]o one factor is dispositive, and the amount of weight that the court should place on each factor may depend on the circumstances of the particular chapter 11 case.
>
> *In re Kalvar Microfilm*, Inc. 195 B.R. 599 600 (Bankr. D. Del. 1996)

In Genesis the Bankruptcy Court's consideration of the timeliness factor was limited to the pre-confirmation requests for a committee that is simply not relevant to the appointment of a post-confirmation equity committee limited whose work would consist

8

of post-confirmation appeals.[5] In any event, *Collier* recognizes that "[t]here are no restrictions on creation of an equity committee at a later stage of the case." 7 *Collier on Bankruptcy* 1102.03(2) (b) at 1102-23.

Procedurally the request for a post-confirmation equity committee was timely. The bankruptcy court confirmed the reorganization plan on September 20, 2001. Hayes' amended notice of appeal was docketed on September 24, 2001 and his request for an post-confirmation equity committee to appeal the confirmation was filed on September 28, 2001. (See App. B) Even the lengthy delay by the Bankruptcy Court in hearing the request and this appeal have not rendered the request for a post-confirmation equity committee untimely. Hayes' petition for a writ of certiorari from his appeal of the confirmation order was docketed on May 5, 2005. And the Haskell plaintiffs have filed a notice of appeal to this Court from the April 27, 2005 dismissal of their fraud complaint. An equity committee is still needed to protect the Genesis equity holders' interests in both these matters.

The Bankruptcy Court abused its discretion by not relating the post-confirmation request for an equity committee to the equity holder appeal of the confirmation and the Haskell fraud on the court suit.

### 5. By Not Considering The New Evidence Contained In The Haskell Complaint

Prior to the May 13, 2004 hearing on the request for a post-confirmation equity committee, the suit by subordinated bondholders was transferred to the Bankruptcy

---

[5] Hayes does not agree that the pre-confirmation request for an equity committee was untimely. The request was made in July 2001 before the debtors' financial advisor hastily recalculated its valuation to account for the increasing value of health care stocks which increased the value of Genesis by $200 million.( App. C No. 6 )

Court. (Tr. 30) The complaint contained a number of allegations that certain senior lenders had caused the understatement of Genesis' EBITDA[6] that in turn caused the investment bankers to undervalue Genesis by hundreds of millions of dollars. The individual allegations and associated EBITDA reductions are shown in the table below:

| Bondholder Allegation | EBITDA Adj. ($ millions) | LT Care | Pharmacy | Reference p. no. |
|---|---|---|---|---|
| a) excessive insurance reserves | 16.7 | 7.5 | 9.2 | 68 |
| b) Multi Care management fees | 11.6 | 11.6 | 0.0 | 9 & 107 |
| c) Manor Care pharmacy sales | 11.0 | 0.0 | 11.0 | 117 |
| d) Mariner contract | 13.4 | 0.0 | 13.4 | 129 |
| g) discontinued health plan | 13.0 | 5.8 | 7.2 | 9 & 141 |
| h) pharmacy costs of goods sold | 26.0 | 0.0 | 26.0 | 146 |
| i) increased Medicare mix | 4.0 | 4.0 | 0.0 | 151 |
| j) additional personnel costs | 35.0 | 15.7 | 19.3 | 152 |
| f) management retention bonus | 6.0 | 2.7 | 3.3 | 39 |
| e) AGE loss | 3.0 | 1.3 | 1.7 | 135 |
| Total Adjustments | 123.0 | 41.1 | 81.9 | |
| Valuation Increase (Chilmark multiples) | 1,045.3 | 287.7 | 757.5 | |

Hayes used the EBITDA adjustments from the complaint to estimate the increased value of the Genesis estate (bottom line of table). This estimate is based on the apportionment of the EBITDA adjustments between Genesis long term care and pharmacy businesses and the EBITDA multiples used by Chilmark, the senior lenders' financial advisor, in the most conservative of the valuations considered by the Bankruptcy Court. Id. 612 - 616. While the assumptions are unbiased they are not based on specific knowledge of Genesis long term and institutional pharmacy businesses. With these caveats, the billion dollar increase to the Genesis enterprise value belies the Bankruptcy Court's confirmation opinion that: "The debtors' present financial posture was presented fully and fairly." Id. 609 The Bankruptcy Court avoided the implications

---

[6] EBITDA is a measure of earnings and EBITDA multiples are similar to a P/E ratio in the more common investment vernacular.

10

that its confirmation did not satisfy bankruptcy law by simply ignoring this new evidence, which was presented in the three page reply to the reorganized debtors' objection to the appointment of a post- confirmation equity committee.

The Haskell complaint also alleged that value was improperly transferred from Genesis to Multicare in the bankruptcy proceedings. The complaint alleges that Multicare management fees paid to Genesis were retroactively reduced; that Multicare should have shared in paying pre-petition claims and that Genesis relieved Multicare its contractual obligations to pay Genesis for pre-petition goods and services. The value transferred from Genesis to Multicare totaled $206 million. The Bankruptcy Court confirmation opinion, however, determined that: "[t]here is no diversion of value from Genesis to Multicare ..." Id. 619 The Bankruptcy Court ignored the new evidence presented in the Haskell complaint in denying shareholders a post-confirmation equity committee.

In denying the appointment of a post-confirmation equity committee, the Bankruptcy Court revisited its denial of a pre-confirmation equity committee noting "we had [a] confirmation contest about valuation, and that contest.... was vigorously scrutinized and resolved in the opinion." (Tr. 25) The opinion described the Bankruptcy Court's reason for relying on the debtors' expert's assessment of $1.75 billion as the value for the reorganized Genesis thusly:

> In evaluating the various opinions offered to establish valuation, I readily recognize that the process of valuation is not an exact science...
> I also recognize that the valuation process requires some level of subjectivity. The weight to be afforded to valuation opinions is enhanced by the level of expertise in the subject industry, and the opportunity of the expert to understand the subject of the valuation. In both respects, the debtors' experts offered superior credentials.... On this record, I can

11

readily conclude that under the debtors' plan, the Senior Lenders will not recover 100% of their claims. Id. 616

The fraud allegations in the Haskell complaint and their similarity to the financial accounting frauds at Enron, WorldCom and in particular HealthSouth raise more yellow flags on the Bankruptcy Court's confirmation opinion. For example, the Bankruptcy Court should have been a little bit skeptical of a valuation based largely on the "superior credentials" of the investment banker leading the valuation. In this case, William McGahan, the Deputy Head of UBS Warberg's Global Healthcare Group, testified on the firm's Genesis valuation. (See App. C) McGahan's superior credentials in health care valuation derived principally from his experience as the lead investment advisor to HealthSouth on mergers and acquisitions valued at more than $8 billion that built HealthSouth into the nations largest rehabilitation hospital. McGahan's sudden resignation from UBS after a story in the *New York Times* reported that the investigation into the accounting fraud at HealthSouth was expected to widen to include the company's investment bankers would only increase the Bankruptcy Court's skepticism.[7] Under the circumstances, discretion requires that the Bankruptcy Court at least be open minded to the possibility that the valuations underpinning the Plan are seriously understated.

The Bankruptcy Court's opinion on confirmation concluded: "that the debtors are insolvent and that there is no possibility of a recovery for equity interests." Id. 620 According to the opinion, the senior lender deficiency came to $133 million. Id. 616 Genesis' general unsecured claims and subordinated debt totaled approximately $467 million with the plan providing a 7.345 % recovery as estimated in the debtor's

---

[7] See "HealthSouth Advisors Said to Be Under Scrutiny," *The New York Times*, Wednesday March 26, 2003 and "HealthSouth's go-to guy," *Fortune*, April 28, 2003 p 38.

Disclosure Statement. Id. 597 The total deficiency of all the creditor classes, based on the debtors' assumptions, was about $566 million, which is more than $600 million less than the estimated $1.2 billion dollar adjustment to the Genesis' enterprise value and transfer of value to Multicare derived from the Haskell complaint. [8]

While there is uncertainty on the size of the surplus, there is little doubt that Genesis was solvent at the time of confirmation and the equity holders were entitled to a sizable distribution. The Bankruptcy Court clearly abused its discretion in denying a post-confirmation equity committee without considering the value implications contained in the specific allegations in the Haskell complaint. On this record, it is hardly surprising that the Bankruptcy Court dismissed the Haskell complaint in its entirety on April 27, 2005. A notice of appeal has been filed and this appeal will also be heard by this Court.

### B. The Bankruptcy Court Denied Shareholders Their Constitutional Rights In Denying The Appointment Of A Post-Confirmation Equity Committee

The Fifth Amendment provides in part that *"No person shall... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."* When questioned, the Bankruptcy Court acknowledged that the Constitution applied to the Genesis bankruptcy proceedings. (Tr.28) But in denying the request for a post-confirmation equity committee because it was untimely; the Bankruptcy Court denied equity holders due process.

The Bankruptcy Court ruled that the post-confirmation request for an equity committee was untimely because the earlier pre-confirmation request for a committee

---

[8] The Bankruptcy Courts ruling denying a post-confirmation equity committee incorrectly asserts: "[Hayes] doesn't insert in that analysis the interests of the other parties... the unsecured creditors, the subordinated bond holders -- who would precede any taking by equity...." (Tr. 27)

13

was untimely and that request was untimely because it was not made at the beginning of the bankruptcy process before any notification of the equity holders.

> Procedurally, this request is grossly untimely. ... I ruled on this matter when I rejected the quest for equity security holder status at the time of confirmation. I ruled on it in my September 12, 2001 opinion. In fact, ... a ground for denying the request was that it was untimely then back two and a half years ago, almost three. (Tr. 24)
>
> . . .
>
> Indeed, perhaps equity will suggest...that it wasn't until then that it became apparent that the intention of the debtors or the senior lenders or a combination of them to, in effect, extinguish equity ... And, that may be. But, the opportunity to take an active role through representation through a prospective committee had to have been presented earlier in order to have any prospect of achieving that result. (Tr. 25)

The Fifth Circuit Court of Appeals found that a similar fact pattern in a bankruptcy case violated an unnamed class member's due process rights. *In re Kendavis Holdings Co.*, 249 F. 3rd 383 (5th Cir. 2001), the court determined that due process precluded discharge of retiree creditor's claim filed twelve years after plan confirmation:

> Protection of an individual's due process right to adequate notice requires more than a cursory review...
>
> . . .
>
> Under the Supreme Court's standard, we must analyze the particular facts of each case. Id. 386

The constitutional principle is that bankruptcy courts cannot deny post-confirmation requests based on timeliness unless notification of the bankruptcy preceded the time when action was required. The Fifth Circuit also held that a general awareness of bankruptcy proceedings through a news article, for example, did not constitute notice. In the Genesis case, the Bankruptcy Court determined that timely shareholder requests for an equity committee needed to precede court notification. This "catch 22" ruling violates shareholders' constitutional due process rights.

## CONCLUSION

The foregoing reasons support a remand of this case to the Bankruptcy Court for the timely appointment of an equity committee with full authority to engage counsel and financial advisors and to take any action required to protect the interests of the Genesis equity class.

Respectfully submitted,

*James J. Hayes*
James J. Hayes, Pro se
4024 Estabrook Dr.
Annandale, VA 22003
(703) 941-4694

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing Appellant's Opening Brief was mailed from the Northern Virginia Regional Post Office on May 14, 2005 to Russell C. Silberglied, Richards Layton and Finger, One Rodney Square, P.O. Box 551, Wilmington, Delaware.

*James J. Hayes*
James J. Hayes

15