IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re<br><br>GENESIS HEALTH VENTURES, INC., *et al.*,<br><br>Reorganized Debtors. | : | Chapter 11 Case No. 00-2692 (JHW)<br><br>(Jointly Administered)<br><br>Re: Docket Nos: 2409, 2410, 2445, and 2531 |

**REORGANIZED DEBTORS' OBJECTION TO MOTION FOR APPOINTMENT OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR THE PURPOSE OF APPEALING CONFIRMATION OF THE GENESIS REORGANIZATION PLAN**

Genesis Health Ventures, Inc. ("GHV") and certain of its direct and indirect subsidiaries, as reorganized debtors (collectively, the "Reorganized Debtors"), hereby object (the "Objection") to the Motion for Appointment of Official Committee of Equity Security Holders for the Purpose of Appealing Confirmation of the Genesis Reorganization Plan filed by James J. Hayes ("Hayes"). In support of the Objection, the Reorganized Debtors respectfully represent as follows:

## Background

1. On June 22, 2000 (the "Commencement Date"), the Reorganized Debtors, other than Healthcare Resources Corp. ("HRC"), each commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). HRC commenced its chapter 11 case on July 31, 2000.

2. On June 5, 2001, the Reorganized Debtors, together with Multicare AMC, Inc., The Multicare Companies, Inc., and certain of their direct and indirect subsidiaries, filed a joint plan of reorganization (as amended, the "Plan") and disclosure statement, pursuant to

section 1125 of the Bankruptcy Code. As set forth below, the Plan was confirmed in October 2001 and has been substantially consummated. The Reorganized Debtors are approaching making the final distributions under the confirmed Plan.

**A. The First Appointment Motion.**

3. On August 27, 2001 -- just days before the confirmation hearing -- Hayes filed his first Motion for Appointment of Official Committee of Equity Security Holders [Docket No. 2218] (the "First Motion"). Because the primary issue on a motion to appoint an equity committee is "hopeless insolvency"[1] and valuation also was one of the prominent objections to the Plan, the Court heard argument on the First Motion in conjunction with the hearing on confirmation of the Plan (the "Confirmation Hearing"). At the Confirmation Hearing, the Court denied the First Motion. On September 20, 2001, this Court entered an order confirming the Plan. On October 2, 2001 (the "Effective Date"), the Effective Date under the Plan occurred.

**B. The Appeal of the Confirmation Order.**

4. On September 27, 2001, Hayes filed a Notice of Appeal of the Confirmation Order (the "Appeal") with the United States District Court for the District of Delaware (the "District Court"). However, Hayes never moved for, nor was he granted a stay pending appeal. Accordingly, distributions under the confirmed Plan were made as and when claims became allowed. Therefore, on September 30, 2002, the District Court dismissed the Appeal on grounds of equitable mootness. Because the clerk of the District Court inadvertently docketed the Appeal twice, the District Court on March 12, 2003 dismissed the "second" identical appeal. Hayes moved for reconsideration of the dismissal of the second Appeal, even

[1] See, e.g., In re Wang Labs, Inc., 149 B.R. 1 (Bankr. D. Mass. 1992); 7 Collier on Bankruptcy ¶ 1102[2][a] at 1102-22

though he never appealed nor moved for reconsideration of the first Appeal's dismissal. The District Court denied the motion for reconsideration on February 26, 2004

5. On March 25, 2004 -- eighteen months after the Appeal was dismissed -- Hayes finally filed a notice of appeal of the District Court's ruling to the Third Circuit Court of Appeals (the "Third Circuit Appeal"). The Third Circuit Appeal was docketed on March 31, 2004. The Reorganized Debtors intend to move to dismiss the appeal as untimely and equitably moot.

C. **<u>The Second Appointment Motion.</u>**

6. On October 5, 2001, Hayes filed the Motion and Brief in Support of Motion for Appointment of Official Committee of Equity Security Holders for the Purpose of Appealing Confirmation of the Genesis Reorganization Plan [Docket No. 2410](the "Motion") that is the subject matter of this Objection. As the Motion was not filed pursuant to the Local Rules of this Court and no hearing date nor objection deadline was set, the Reorganized Debtors have not yet objected, until now. However, on October 15, 2001, the Official Committee of Unsecured Creditors (the "Committee") filed its Response in Opposition to the Motion for Appointment of Official Committee of Equity Security Holders for the Purpose of Appealing Confirmation of the Genesis Reorganization Plan [Docket No. 2445](the "Committee Response"). Notwithstanding Local Rule 9006-1(d), which states that "no reply papers shall be filed unless ordered by the Court," on November 1, 2001, Hayes filed the Reply to Arguments of the Unsecured Creditors Committee Opposing Motion To Appoint Official Committee of Equity Security Holders For the Purpose of Appealing Confirmation of the Genesis Reorganization Plan [Docket No. 2531](the "Reply").

7. On March 13, 2004, Hayes submitted a letter to the Court requesting a hearing on the Motion.

## Argument

## I. THE MOTION SHOULD BE DENIED FOR THE REASONS SET FORTH IN THE COMMITTEE RESPONSE.

8. The Committee Response fully sets forth the reasons why the Motion was ill fated even when it was filed in October 2001. Specifically, the Committee Response points out that the Court already denied Mr. Hayes' First Appointment Motion after finding that the Debtors were "hopelessly insolvent." The Committee Response also notes that essentially Mr. Hayes really was asking the Court to shift fees at an inappropriate time to do so.

9. Rather than burden the Court with duplicative argument, the Reorganized Debtors adopt, as if set forth in full herein, the Committee Response, which is attached hereto as Exhibit A for the Court's convenience. Additionally, the Reorganized Debtors note that the Motion is better viewed as a Motion for reargument of the denial of the First Appointment Motion. Viewed as such, the Motion is both procedurally defective because it was not timely filed[2] and does not even attempt to articulate a basis for the granting of the extraordinary remedy of reargument. See In re Hechinger Investment Company of Delaware, 303 B.R. 18, 23 (D. Del. 2003) (stating that motions for reconsideration or reargument should be granted only sparingly); Karr v. Castle, 768 F. Supp. 1087, 1090 (D. Del. 1991)(stating that motions for reargument should be granted only sparingly, in circumstances where the court has patently misunderstood a party or made an error not of reasoning but of apprehension).

## II. THE MOTION IS EQUITABLY MOOT.

10. In the two in a half years since the Committee filed the Committee Response, an additional reason has emerged for the denial of the Motion. Specifically, Mr.

---

[2] See D. Del. LR 7.1.5 ("A motion for reargument shall be served and filed within ten days after the filing of the Court's opinion or decision.")

Hayes failed to seek or obtain a stay pending appeal of the Confirmation Order. Accordingly, (i) the District Court dismissed Mr. Hayes' appeal (although, a year later, he belatedly has attempted to appeal that dismissal to the Third Circuit Court of Appeals), and (ii) the Reorganized Debtors have made substantially all of the distributions they are required to make under the Plan.

11. This matter is now equitable moot. See In re Innovative Clinical Solutions, Ltd., 302 B.R. 136, 140 (Bankr. D. Del 2003) (citing In re Continental Airlines, 91 F.3d 553, 560) (the foremost consideration in determining whether the doctrine of equitable mootness applies in the bankruptcy context is whether or not the plan has been substantially consummated). What would an equity committee do at this point? As Judge Farnan pointed out on appeal, the appeal itself cannot be maintained at this point because the purpose of the appeal is to determine whether any of the distributions may be made to the former equity security holders of the Reorganized Debtors. But substantially all of the distributions have already been made. In short, not only is there nothing for Mr. Hayes to appeal at this juncture, but there is nothing for an equity committee to negotiate. For the same reasons that the appeal itself is equitably moot, so is the Motion.

## II. THE BONDHOLDER COMPLAINT IS IRRELEVANT.

12. Mr. Hayes' letter dated April 6, 2004, suggests that the recent complaint filed by certain bondholders styled Richard Haskell, et al. v. Goldman Sachs & Co., Mellon Bank, N.A., Highland Capital Management, L.P., Genesis Health Ventures, Inc. and George V. Hager (the "Haskell Litigation") supports the appointment of an equity committee. This argument is a red herring. The Haskell Litigation contends that the Debtors and the Court undervalued the Debtors by 25%. Even if Plaintiffs in the Haskell Litigation were successful -- which they plainly will not be, on the merits and for procedural reasons which will be briefed

before this Court at an appropriate time -- in no way does that suggest that equity would be in the money. Unsecured creditors in these cases received a dividend of approximately 7 5%. Thus, even if the Court somehow were to conclude, despite all of the procedural, legal and factual problems replete in the complaint in the Haskell Litigation, that the bondholders should have been paid *13 times* what they were paid pursuant to the Plan, equity still would have been out of the money and received nothing. Accordingly, the filing of the Haskell Litigation does not support the appointment of an equity committee.

WHEREFORE, the Reorganized Debtors respectfully request that the Court (i) deny the relief requested in the Motion, and (ii) grant the Reorganized Debtors such other and further relief as is just and proper.

Dated: April 23, 2004
Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Etta R. Wolfe (No. 4164)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

- and -

Michael F. Walsh
Gary T. Holtzer
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR THE REORGANIZED DEBTORS

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| GENESIS HEALTH VENTURES, INC , et al., | Case No. 00-2692 (PJW) |
| Debtors | (Jointly Administered) |

-------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| MULTICARE AMC, INC., et al. | Case No. 00-02494 (JHW) |
| Debtors | (Jointly Administered) |

-------------------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GENESIS HEALTH VENTURES, INC., ET AL., IN OPPOSITION TO THE MOTION FOR APPOINTMENT OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR THE PURPOSE OF APPEALING CONFIRMATION OF THE GENESIS REORGANIZATION PLAN**

The Official Committee of Unsecured Creditors (the "Committee") of Genesis Health Ventures, Inc. ("Genesis" or "GHV") and certain of its direct and indirect subsidiaries (collectively, the "Genesis Debtors;" collectively with Multicare AMC, Inc. and its subsidiary debtors (the "Multicare Debtors"), the "Debtors"), by and through its undersigned counsel, hereby files this Response in Opposition to the Motion for Appointment of Official Committee of Equity Security Holders for the Purpose of Appealing Confirmation of the Genesis Reorganization Plan (the "Motion"), filed by James J. Hayes ("Mr Hayes") The Committee respectfully submits as follows:

**BACKGROUND**

1. On June 22, 2000 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On July 12, 2000, the United States Trustee formed the Committee, which currently consists of the following members: American General Investment Management, L.P., GMS Group LLC, The Bank of New York, Abbott Laboratories, State Street Bank and Trust Company, and Service Employees International Union, AFL-CIO.

3. On August 18, 2000, the Court entered an order authorizing the retention of Akin, Gump, Strauss, Hauer & Feld, L.L.P. as co-counsel to the Committee In September 2000, the Court entered an order authorizing the retention of Pachulski, Stang, Ziehl, Young & Jones P.C. as co-counsel to the Committee.

4. The Debtors filed a Joint Plan of Reorganization (the "Plan") on July 6, 2001. The Court conducted plan confirmation hearings on August 28 and August 29, 2001 (the "Confirmation Hearings") On September 20, 2001, an Order was entered in this case confirming the Debtors' Joint Plan of Reorganization over several objections (the "Confirmation Order"). The Court published an opinion prior to entry of the Confirmation Order. *See In re Genesis Health Ventures, Inc., et al*, 266 B.R. 591 (Bankr. D. Del. 2001).

5 Mr. Hayes was a holder of Common Stock of Genesis whose shares were extinguished pursuant to the Plan terms *See Genesis*, 266 B.R at 598. Mr. Hayes filed a notice of appeal on September 18, 2001 Mr Hayes filed the instant Motion on October 1, 2001 in which he requests that the Court appoint a committee of equity security holders for purposes of appealing the Confirmation Order.

## ARGUMENT

A. THIS COURT AND THE UNITED STATED TRUSTEE HAVE PREVIOUSLY DENIED MR. HAYES REQUESTS TO HAVE AN EQUITY COMMITTEE APPOINTED IN THE GENESIS CHAPTER 11 CASE BECAUSE THE DEBTORS ARE HOPELESSLY INSOLVENT

6. On July 10, 2001, Mr. Hayes requested that the United States Trustee appoint an Official Committee of Equity Security Holders ("Equity Committee")

7. On July 16, 2001, Akin Gump, as counsel to the Committee, advised the United States Trustee in writing that it opposed the appointment of an Equity Committee On July 30, 2001, the Genesis Debtors, through their legal counsel, Weil Gotshal & Manges LLP, advised the United States Trustee in writing that they opposed the appointment of an Equity Committee.

8. On August 2, 2001, the United States Trustee advised Mr Hayes that the Trustee would not appoint an Equity Committee.

9. On August 8, 2001, Mr Hayes filed a Motion to Appoint an Official Committee of Equity Security Holders (the "First Hayes Motion"). The Committee responded to the First Hayes Motion in its Reply to the Objections to the Confirmation of Debtors Joint Plan of Reorganization (the "Reply").

10 In support of confirmation, the Committee directed the Court's attention to three separate enterprise valuations of the Genesis Debtors prepared by independent financial advisors (retained by the Genesis Debtors, the Genesis Senior Lenders and the Committee). Each valuation expert concluded that the Genesis Debtors' estates were insolvent by <u>many</u> millions of dollars. In fact, the valuations concluded that the Genesis Debtors were <u>so insolvent</u> that their enterprise value did not even equal the amount of the secured debt, administrative expenses and priority claims owed to creditors, much less the amount of secured and unsecured debt owed to creditors.

11. For the Genesis common stockholders to be entitled to any recovery, all secured and unsecured claims would have to be paid in full (including post-petition interest) and the three series of preferred stock would have to receive an appropriate recovery. As the Committee argued at the Confirmation Hearings, unless the valuations of the Genesis Debtors prepared by these experts understated the value of the estates by at least $625 million, there simply would be no value available for the Genesis common stockholders. Consequently, the Committee opposed the formation of an Equity Committee, the costs of which would be borne by the Genesis unsecured creditors.

12. This Court denied the First Hayes Motion in the Confirmation Order because the appointment of an equity committee was unwarranted in light of the Court's adjudication of insolvency. Upon consideration of the First Hayes Motion and other shareholder objections to confirmation, the Court clearly explained that insolvency was the primary basis for refusing to appoint an additional committee:

> "The motions for a trustee and/or another committee come at the point of confirmation of the Debtors' plan. Neither objector has offered any evidence of the existence of value beyond the position of Senior Lenders and junior creditors. ***I have concluded that debtors are insolvent and that there is no possibility of a recovery for equity interests.*** At this late date, the appointment of additional professionals and their associated administrative expenses cannot be viewed as a benefit to the debtors' estates. The objections are overruled and the related motions denied."

*Genesis*, 266 B.R. at 620 (*emphasis added*).

13. The decision to appoint an equity committee begins with whether it appears that shareholder interests are adequately represented in a chapter 11 case. 11 U.S.C. §1102(a)(2)(1994). In addition to examining the number of shareholders and the complexity of the case, a bankruptcy court must consider whether the cost of the additional committee

significantly outweighs the concern for adequate representation. *See In re Wang Labs, Inc.*, 149 B.R. 1 (Bankr. D. Mass. 1992)(*citing In re Johns-Manville Corp.*, 68 B.R. 155, 159 (Bankr S.D.N.Y. 1986). The bankruptcy court must balance the costs to the estate of an additional committee and its attendant professionals (*e.g. counsel, financial advisors, etc.*) with the likelihood of a shareholder recovery.

14. The inherent difficulties posed by this balancing act has led to solvency becoming the primary issue in determining whether an official committee of equity security holders should be appointed in a chapter 11 case. *See, e.g., In re Wang Lab, Inc.; In re Emons Indus., Inc.*, 50 B.R. 692 (Bankr. S.D.N.Y. 1985); *see also 7 Collier on Bankruptcy* ¶ 1102.03[2][a] at 1102-22 ("The threshold consideration faced by the United States Trustee in determining whether to appoint a committee of equity security holders is whether there is sufficient equity in the estate to justify the cost and expense of a separate committee.") Solvency is generally addressed at the early stages of a case where the United States Trustee must rely on the debtor's schedules, representations concerning insolvency, and other public information to formulate a position on whether a shareholder recovery may be possible.

15. Appointment of an equity committee in the face of undeniable evidence of insolvency is an unreasonable risk, the costs of which will be borne solely by estate creditors. The United States Trustee and a bankruptcy court are given great discretion in balancing the inherent risks and potential benefits of additional committees. Bankruptcy judges, as well as the United States Trustee, draw on debtor specific knowledge and institutional knowledge when confronted with these requests. Most, if not all, bankruptcy courts have recognized that appointment of an equity committee when a debtor is hopelessly insolvent is not permissible because the nil probability of a shareholder recovery is dwarfed by the virtual certainty that

creditor recoveries will be diminished by the equity committee's futile efforts. Judge Abram summarized this notion in *Emons Indus* by characterizing the appointment of an equity committee in the face of hopeless insolvency as a gift by estate creditors:

> "This court is of the view that generally no equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift. See Bankruptcy Code § 1129(b)(2)(B)(ii). The court has denied a motion for appointment of an equity committee in a large Chapter 11 case, subsequently confirmed, on that basis. The court has not altered its view of the correctness of this general rule even though in that case the plan confirmed provided for the participation of equity security holders."

*In re Emons Indus., Inc.*, 50 B.R. at 694.

16. The futility of an equity committee under these circumstances is recognized in *Collier*:

> "Many chapter 11 debtors are hopelessly insolvent and the only mystery in the case will be to ascertain the extent of the creditors' loss. In such cases, the interests of existing stockholders will be wiped out in a plan and stockholders do not need a committee to look out for their interests."

7 *Collier on Bankruptcy* ¶ 1102.03[2][a] at 1102-22.

17 The guesswork concerning insolvency occurring in the early stages of a chapter 11 case has been obviated in the instant case. This Court has had the opportunity to consider exhaustive evidence on the subject and as a result thereof, has adjudicated the Genesis Debtors insolvent. *See Genesis*, 266 B.R at 620. In light of this Court's factual finding that shareholders are not entitled to any recovery from the Genesis Debtors, appointment of an Equity Committee at this juncture would be a colossal waste of estate assets, the costs of which will be borne solely by unsecured creditors.

B. SENIOR LENDERS AND UNSECURED CREDITORS WHO SUPPORTED THE PLAN SHOULD NOT SHOULDER THE EXPENSE OF PROSECUTING MR. HAYES' APPEAL

18. The Motion is an overt attempt by Mr. Hayes to foist the costs of prosecuting his appeal on to the shoulders of the Senior Lenders and unsecured creditors. The Committee encouraged unsecured creditors to support the Plan because it believed that it provided the best recovery available under the circumstances. Now in an ironic twist, unsecured creditors are being asked to bear the expense of attacking it. The Committee hired its own financial advisor, Houlihan Lokey Howard & Zukin ("Houlihan"), to estimate the enterprise value of the Genesis Debtors for purposes of contesting the valuation proposed by the Debtors. For self-evident reasons, the Committee scrutinized the enterprise valuations prepared by the Debtors' and Senior Lender's respective financial advisors. After vigorous evaluation, however, Houlihan's independent enterprise valuation was only slightly higher than the valuations propounded by the Debtors and the Senior Lenders. Realizing that the Senior Lenders were very likely undersecured, the Committee negotiated a settlement with the Senior Lenders whereby the unsecured creditors were allocated a portion of the distribution to which the Senior Lenders would have otherwise been entitled. The settlement terms were designed to maximize recoveries to Genesis unsecured creditors and provide for an expeditious confirmation.

19. The opinions of numerous valuation experts were entered into evidence at the Confirmation Hearing. Upon consideration of such expert testimony and opinion, the Court stated that, "[a]fter vigorous scrutiny of the evidence presented at the confirmation hearings, I am **convinced** that the Senior Lenders are undersecured and that the treatment of junior creditors and equity security holders proposed in the plan is consistent with the fair and equitable requirements for confirmation." *Id* at 610 (*emphasis added*); *see Id.* at 616 ("under the debtors' plan, the

Senior Lenders will not recover 100% of their claims . . . accordingly, there is no violation of the absolute priority rule.")

20. Rebuked in his prior efforts, Mr. Hayes now contends that appointment is appropriate because "[t]he costs of appointing a committee of equity security holders at the appellate stage is low and does not outweigh the need to furnish adequate representation for equity security holders of Genesis." (Hayes Motion, ¶ 5).

21. The Committee disagrees with Mr. Hayes assessment of the low "costs of appeal" and the need for representation at this stage of the bankruptcy case. First, Mr. Hayes fails to consider that the cost of an equity committee at this juncture has increased dramatically because the probability of a shareholder recovery is diminished by virtue of the confirmation order. The virtually nonexistent probability of a shareholder recovery in this bankruptcy case has become even more remote because this Court has, by way of adjudication, determined that shareholders are not entitled to any distribution. Mr. Hayes' efforts to receive a distribution on account of his equity interests face steeper obstacles on appeal, as the Court's adjudication of insolvency will not be set aside unless the finding is determined to be *clearly erroneous*. *See* FED. R. BANKR. P. 7052(a), 9014. In light of the valuation evidence presented at the Confirmation Hearings, this scenario appears extremely unlikely.

22. Second, Mr. Hayes fails to grasp that his interests were adequately represented by the Committee under the particular facts and circumstances of this case. The Committee had every incentive to contest the Debtors' and Senior Lenders valuations in order to increase unsecured creditor recovery. The Committee's interests were aligned with those of Mr. Hayes in as much as a higher valuation would ultimately benefit shareholders if a 100% recovery were realized for unsecured creditors. The Committee's independent valuation revealed, however, the

likelihood that Senior Lenders were undersecured. Understanding the inexact science of business valuation and the risk that the Court would find unsecured creditors entitled to no distribution, the Committee negotiated a settlement with the Senior Lenders in order to ensure that a recovery for unsecured creditors would occur. The distribution to unsecured creditors under the Plan is a far cry from a 100% dividend. *See Genesis*, 266 B.R. at 598 (unsecured creditors of Genesis will receive a dividend of 7.34%, exclusive of the value of the New Warrants). The Committee's inability to negotiate a dividend even marginally approximating the full amount of unsecured claims suggests that shareholder interests were adequately represented, under the circumstances, in the bankruptcy case.

23. While unsecured creditors are statutorily entitled to the appointment of a committee under section 1102(a)(1) of the Bankruptcy Code, the appointment of other committees is discretionary. *See* 11 U.S.C. §1102(a)(2)(1994). The appointment of an equity committee in the face of hopeless insolvency is unreasonable, unwarranted, and arguably, an abuse of discretion. This Court carefully considered the opinions of several valuation experts, including the experts retained by individuals possessing economic interests similar to those of Mr. Hayes. Mr. Hayes is not entitled to receive a second bite at the apple courtesy of the Senior Lenders and unsecured creditors.

**WHEREFORE**, for all of the foregoing reasons, the Committee respectfully requests that this Court (i) deny the Motion before the Court, and (ii) grant the Committee such other and further relief as this Court deems just and proper

Dated: Wilmington, Delaware
October 15, 2001

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Lisa G. Beckerman, Esq.
Mark D. Taylor, Esq.
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

-and-

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C

Laura Davis Jones, Esq. (Bar No. 2436)
Rachel S. Lowy (Bar No. 3753)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel to the Official Committee of Unsecured Creditors